IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GAVIONE TAMMERELLO, Plaintiff, v. AMERIQUEST MORTGAGE COMPANY, a foreign corporation, and GREEN TREE SERVICING, LLC, a foreign corporation, Defendants. | No. 05-CV-0466 HONORABLE DAVID H. COAR |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gavione Tammerello ("Plaintiff") filed an amended complaint of six remaining counts against Defendant Ameriquest Mortgage Co. ("Ameriquest" or "Defendant") for violations of the Truth and Lending Act ("TILA"), Real Estate Settlement and Procedures Act ("RESPA"), and Illinois Consumer Fraud Act ("ICFA"), as well as common law fraud, breach of contract, and slander. Before this court are Defendant's motions for summary judgment under Federal Rule of Civil Procedure 56, and for dismissal of the breach and slander counts under Rule 12(b)(6). For the following reasons, Defendant's dismissal motion is DENIED as moot. Defendant's motion for summary judgment is GRANTED with respect to all counts.

# BACKGROUND[1]

Plaintiff filed a 15-count complaint against Defendants Green Tree Servicing, LLC ("Green Tree") and Ameriquest in the Circuit Court of Cook County on December 22, 2004 for regulatory and common law claims related to a mortgage transaction. Defendants filed a notice of removal to federal court on January 26, 2005. Defendants then filed separate motions to dismiss on March 31, 2005. Green Tree's motion was granted in its entirety. Ameriquest's motion was granted with respect to two counts, but these were later replaced in Plaintiff's amended complaint dated September 20, 2005. Six counts are now pending against Defendant. Plaintiff's complaint includes allegations that Ameriquest: engaged in unlawful conduct when it refinanced his mortgage at a higher interest rate than promised; failed to disclose key pieces of information throughout the financing process; rushed him through the closing; failed to explain the documents he was supposed to sign; and failed to provide him with a copy of all the documents after closing. In subsequent pleadings, he also alleges that Defendant processed two loans when only one was expected; failed to provide a revised notice of right to cancel; failed to disclose the total financing costs; and failed to provide him with form 12/30/99-HUD-1.

Now before this court is Defendant's motion for summary judgment. Defendant asserts that there are no remaining genuine issues of fact, that all remaining claims are time-barred under their relevant statutes of limitations, and that Plaintiff has not established essential elements of his claims as a matter of law.

---

[1] All facts are taken from the parties' L.R. 56.1 submissions.

# FACTS

Plaintiff owned a residential home located at 19 West 136 Woodcreek Place in Downers Grove, carrying a mortgage held by Long Beach Mortgage Company ("Long Beach") at an interest rate of 10.6%. In November, 1999, Plaintiff received a "cold call" from Ameriquest employee Katrina Martinez ("Martinez"), who discussed with him the possibility of refinancing his mortgage and claimed that she could help him lower his interest rate to 8%. On December 10, 1999, Plaintiff signed and dated a variety of mortgage-related documents for Ameriquest during an in-person meeting with Martinez.[2] By these documents, Plaintiff secured a loan in the amount of $428,000, to be divided between settlement charges, disbursement to Long Beach for the previous mortgage, and disbursement to Plaintiff.[3] At that meeting, Plaintiff did not read any of the documents, and though he did notice that an interest rate of 10% was written on a piece of paper sitting on the meeting table, he was verbally reassured that he would receive the 8% rate he had been promised. On December 27, 1999, Plaintiff signed an additional mortgage agreement with Conseco Bank, Inc. ("Conseco") for a loan in the amount of $52,500.[4] Plaintiff did not make a payment on January 1, 2000 to his previous lender, Long Beach, and began to make payments on his new mortgage with Ameriquest starting February 1, 2000. The interest rate for Plaintiff's Ameriquest mortgage was at all times 10.25%.

---

[2] These documents included an adjustable rate promissory note, mortgage, notice of right to cancel, borrower's acknowledgment of final loan terms, uniform residential loan application, adjustable rate rider, and list of payment information.

[3] Plaintiff denies receiving this disbursement.

[4] Parties are in disagreement regarding this additional loan. Plaintiff claims that he was coerced into entering a required second loan with Conseco when he thought that he would only be receiving a single loan from Ameriquest. Ameriquest admits that Martinez notarized the Conseco mortgage but otherwise denies this claim.

Plaintiff claims that he never received copies of his loan documents at the meeting on December 10, 1999,[5] and that he called several times afterward to verify that the loan had been finalized and request that he be given the paperwork. In March or April of 2000, Plaintiff retained an attorney, Peter Metrou ("Metrou"), to act as his representative in requesting copies of the mortgage documents. He claims that at this point "he knew he had been injured, but could not obtain information necessary to decide whether the injury was due to defendant's wrongdoing." (Pl.'s Resp. To Def.'s (Corr.) L.R. 56.1 Statement, at ¶ 56.) It is unclear as to what Plaintiff thought his injury was and what exactly he communicated to Ameriquest. In May of that year, an Ameriquest employee by the name of Claire Cotter ("Cotter") spoke with Plaintiff and Metrou to address their concerns. In September of that same year, Cotter sent Metrou a copy of documents related to Plaintiff's loan. With the advice of counsel, Plaintiff came to believe that there was nothing to be done about any undisclosed terms[6] and decided not to pursue further action. In 2004, Plaintiff's monthly mortgage payments rose,[7] and this allegedly prompted him to contact Defendant to investigate the terms of his loan. At this point, he allegedly received additional documents and explanations related to his loan, but felt that the

---

[5]Defendant disputes this and draws support from the "Important Notice to Borrowers," signed and dated by plaintiff, that states that he "received a full and complete set of all loan documents you have signed with this transaction, incuding a copy of this notice." (Def.'s Resp. to Pl.'s (Corr.) L.R. 56.1(b)(3)(B) Statement ex. 1.)

[6]Plaintiff's account of exactly what information Defendant failed to provide varies, but generally involves the financing charge, the interest rate, the existence of a required second loan, the disbursement to Plaintiff, and the right to rescind. *See* discussion in Common Law Fraud section, *infra*.

[7]The parties disagree as to the reason for this increase in monthly payments. Plaintiff suggests that it is related to some of the inappropriately undisclosed costs of his mortgage or a change in the interest rate, while Defendant asserts that it was "amounts owed for taxes and/or insurance." (Def.'s Reply Mem. Supp. Mot. Summ. J. n. 2.)

charges were not adequately justified.  Plaintiff claims that he then realized Defendant had wrongly withheld information regarding the terms of the loan[8] and he therefore filed the instant suit.

## LEGAL STANDARD

A party seeking summary judgment has the burden of showing, through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact that would prevent judgment as a matter of law.  Fed. R. Civ. P. 56(c).  On a motion for summary judgment, courts "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party."  *Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir. 2001).

Even so, the non-moving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, he must go beyond the pleadings and support his contentions with proper documentary evidence.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  To successfully oppose the motion for summary judgment, the non-movant must do more than raise a "metaphysical doubt" as to the material facts, *see Wolf v. Northwest Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001) (citation and quotation omitted), and instead must present definite, competent evidence to rebut the motion, *see Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir.2001); Fed. R. Civ. P. 56(c).  In ruling on a motion for summary judgment, the Court must decide, based on admissible evidence, whether any material

---

[8]*See supra* note 6.

dispute of fact exists that requires a trial. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A non-moving party who bears the burden of proof on a specific issue must demonstrate by specific factual allegations that there is a genuine issue of material fact in dispute. *McMillian v. Svetanoff*, 878 F.2d 186, 188 (7th Cir.1989). This evidence provided by the nonmovant must be sufficient to enable a reasonable jury to find in his or her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

## ANALYSIS

At the outset, we note that the Plaintiff has stipulated to the dismissal of Counts X, XIV, and XV, which claimed violations of RESPA, breach of contract, and slander. For that reason, summary judgment with respect to these counts is GRANTED, and defendant's motion to dismiss Counts XIV and XV is DENIED as moot.

### *Estoppel Doctrines*

Statutes of limitations serve as more than mere technicalities, *see Stephan v. Goldinger*, 325 F.3d 874, 876 (7th Cir. 2003), and are only rarely voided through equitable doctrines, *see Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (stating "that federal courts have typically extended equitable relief only sparingly"). Now faced with these limitations, Plaintiff primarily argues that his claims shouldn't be time-barred because equitable doctrines nonetheless

apply. This argument has been addressed in the dismissal pleading, but has only become an appropriate topic for thorough legal analysis at this stage.

As Defendant has fulfilled his Rule 8(c) obligation to notify parties that it would use statutes of limitations as an affirmative defense, the burden is on the Plaintiff to demonstrate that they should be tolled. *See* Fed. R. Civ. P. 56(e); *Stark v. Dynascan Corp.*, 902 F.2d 549, 551 (7th Cir. 1990). In the process of denying Defendant's 12(b)(6) motion, this court invited Plaintiff to present evidence during discovery that could support the application of estoppel doctrines. We denied dismissal at that stage due to the possibility "that the doctrine of equitable tolling may permit Plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of a claim" (equitable tolling), or that the Defendant has taken "active steps to prevent the plaintiff from suing in time" (equitable estoppel). *See Blaney v. U.S.*, 34 F.3d 509, 513 (7th Cir. 1994) (citations omitted). As the Seventh Circuit has stated, both of these doctrines are capable of "stop[ping] the statute of limitations from running even if the accrual date has passed." *Id.* (citing *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990)). This court believed that Plaintiff's complaint at least supported the inference that one of these two equitable doctrines might be appropriate.

Plaintiff continues to maintain that estoppel is appropriate to this case, but during discovery Plaintiff has been unable to develop significant evidence upon which either doctrine could be founded. When faced with the direct question of how they might be supported, Plaintiff merely stated that he "became aware of the fact that there was a problem when his monthly mortgage payments increased by almost 100% in 2004," but that he was "unable to answer this

interrogatory completely at this time without the benefit of all documents..." (Pl.'s Answer to Def.s Interrogs. at 1-2.) It does not appear that Plaintiff has supplemented those answers with any additional information to help establish Defendant's "active steps." Plaintiff has arguably portrayed Defendant or its employees as having failed to: "send plaintiff copies of the documents he had signed"; "send or disclose the 12/30/99-HUD-1"; "send a revised or new notice of right to cancel for its failure on 12/10/99...to clearly and conspicuously disclose...a second loan with Conseco Bank...and the total costs of financing." (Pl.'s Mem. in Opp. to Def.'s Mot. for Sum. J. at 9-10.) However, these are in fact the very regulatory and common law errors that created the right of action in the first place. Equitable estoppel must involve "active steps to prevent the plaintiff from suing on time," requiring activities above and beyond the underlying cause of action. *Mitchell v. Donchin*, 286 F.3d 447, 450 (7th Cir. 2002); *see also Hentosh v. Herman M. Finch Univ. of Health Sci./Chicago Med. Sch.*, 167 F.3d 1170, 1174-75 (7th Cir. 1999) (rejecting estoppel based on the secrecy of employer's sexual advances because the secret advances *were* the cause of action). Generally, these "active steps" involve hiding evidence or promising not to plead the statute of limitations. *Jackson v. Rockford Hous. Auth.*, 213 F.3d 389, 394 (7th Cir. 2000).

Plaintiff has offered no evidence of such actions. Instead, the record shows only Plaintiff's repeated assertions that Defendant tried to prevent him from filing a suit, which at their most compelling - e.g., "the documents defendant did disclose...gave the false appearance that defendant had complied with TILA's disclosure requirements" (Pl.'s Mem. in Opp. to Def.'s Mot. for Sum. J. p. 10; Baer Aff. at 7) - consist almost entirely of Plaintiff's interpretation of the motivation and impact of underlying actions. These assertions are unavailing in light of the

Seventh Circuit's ruling that "self-serving statements contained in an affidavit will not defeat a motion for summary judgment when those statements are without factual support in the record." *Smith v. Potter*, 445 F.3d 1000 (7th Cir. 2006).

It is telling that the point at which Plaintiff claims to have been put on notice of Defendant's fraud, November of 2004,[9] did not involve a change in the actions of Defendant itself but was simply a date at which the Plaintiff decided to pursue additional investigation regarding the terms of his loan. Even if Defendant is guilty of continually failing to disclose the mortgage terms – a claim that is inadequately established by the record – those actions were simply the same alleged wrongs that it had committed all along, rather than "active steps" taken to avoid a lawsuit. This does not serve as a sufficient basis for tolling the statute of limitations.

In addition, the granting of equitable estoppel must be premised on the plaintiff's "*actual and reasonable* reliance thereon." *Wheeldon v. Monon Corp.*, 946 F.2d 533, 537 (7th Cir. 1991) (emphasis added). Here, even if we accept as true Plaintiff's assertion that he relied on Defendant's alleged deception, it cannot be said that this amounted to reasonable reliance, where according to Plaintiff's own account he received and ignored indications that the loan was not what he thought it should have been. *See Smith v. Potter*, 445 F.3d 1000, 1011 (7th Cir. 2006) (finding that the plaintiff in an employment dispute could not select only one worker's representation on which to rely despite large amounts of countervailing information in the workplace). Whether or not Defendant's actions amounted to "active steps" to prevent the Plaintiff from filing suit, the alleged deception was not of such sophistication that Defendant's

---

[9]The record is unclear as to when this realization took place, though based on the record possibilities include Dec. 10, 1999, Dec. 27, 1999, April-May, 2000, and November, 2004. *See* discussion in Common Law Fraud section, *infra*.

reliance could be deemed reasonable, particularly in light of indications that the mortgage was not being structured as Plaintiff had intended, as well as the importance of the transaction.

Similarly, Plaintiff has provided no information on which a reasonable jury could base a finding of equitable tolling. It is essential to a claim for equitable tolling that, despite Plaintiff's every effort, he was unable to obtain adequate information to conclude that there is a basis for action. *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 373 (7th Cir. 2001). A required element of this doctrine is due diligence, which Plaintiff has not demonstrated. Plaintiff failed to execute the most basic investigatory functions by declining to: read the documents he was signing, document his phone calls to the Defendant, calculate the interest rate from received bills, determine if retained counsel had adequately performed its job, or act in any way to clarify the terms of his mortgage between September of 2000 and November of 2004. "[T]he bottom line is that equitable tolling does not condone inaction." *Jackson*, 213 F.3d at 398. In no way can Plaintiff's repeated failure to act be considered due diligence, particularly on a matter of such significance as a mortgage loan valued at hundreds of thousands of dollars. As is appropriate here, "the negligence of the party invoking the [estoppel] doctrine can tip the balance against its application." *Cada*, 920 F.2d at 453.

Given that Plaintiff has not provided evidence to support estopping Defendant's statute of limitations defense, he cannot avoid summary judgment on that basis. This court must next consider Defendant's claims that its motion for summary judgment should be granted as to each of the remaining counts of the amended complaint due to statutes of limitations and failure to establish the elements of the offenses.

### *Common Law Fraud*

At the outset of this analysis we must clarify what allegedly fraudulent behavior is being considered. According to Plaintiff's first formulation of Defendant's offenses, the problem was clear; the Plaintiff had been told that the interest rate on his mortgage would be 8%, he was "rushed through" the closing so did not have a chance to question the relevant terms of the agreement, and he did not receive the appropriate documentation with which he could verify loan details. (*See generally* Orig. Compl., Am. Compl., Tammarello Dep.) However, in subsequent pleadings this story was expanded to include additional claims to the general exclusion of the interest rate argument. (*See generally* Tammerello Aff., Baer Aff., Pl.'s Resp. to Def.'s (Corr.) Rule 56.1 Statement, Pl.'s Mem. In Opp'n to Def.'s Mot. for Summ. J. (all filed after Def.'s (Corr.) Mot. for Summ. J., claiming that financing charges were not adequately disclosed and that the Conseco loan was not foreseen from the course of negotiations).) As Defendant points out, shifting the argument in this manner might have steered Plaintiff clear of some potential statute of limitations problems. However, it cannot assist him at this stage.

A response to a motion for summary judgment is not the appropriate means by which to amend a complaint. *Griffin v. Potter*, 356 F.3d 824, 830 (7th Cir. 2004); *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002) (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)); *see Whitaker v. T.J. Snow Co.*, 151 F.3d 661, 664 (7th Cir. 1998) (noting that it is improper for a plaintiff to amend a complaint through arguments at the summary judgment stage); *Speer v. Rand McNally & Co.*, 123 F.3d 658, 665 (7th Cir. 1997) (affirming district court's decision not to permit the plaintiff to amend her complaint to raise a hostile environment claim where "[t]he first time she raised this issue was in a single-page argument in her brief in

opposition to the company's summary judgment motion"; "The district court was well within its discretion not to allow Speer to proceed on such a theory when discovery had ended and a summary judgment motion was pending."); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in opposition to a motion for summary judgment."). The court finds that *Whitaker*, *Speer*, and *Shanahan* apply in this case.

At this point, all discovery has been done according to the terms originally formulated in the Complaint filed December 12, 2004, and under its amended form of September 20, 2005; Plaintiff cannot now counter Defendant's Motion for Summary Judgment with new claims not subject to discovery. Allowing such an end-run would be particularly inappropriate in a claim for fraud, which Plaintiff was required to plead with particularity in order to survive a motion to dismiss; Plaintiff adequately pleaded the "who, what, when and where of the fraud" in order to survive Defendant's 12(b)(6) motion, *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003) (applying the particularity requirement of Fed.R.Civ.P. 9(b)), and this court will not permit him to now abandon those particulars. When responding to the Defendant's Motion to Dismiss, this court found that the fraudulent "what" of which Ameriquest was allegedly guilty was the act of "communicating to Plaintiff that his interest rate would not exceed eight percent when in fact Ameriquest knew the rate would exceed that amount." Therefore, in considering the motion for summary judgment, this court will limit itself to this claim as taken from the Plaintiff's amended complaint, as well as any additional facts brought out in discovery with respect to that allegation.

Under Illinois law the statute of limitations for common law fraud is five years. 735 ILCS 5/13-205; *U.S. v. Squire*, 2005 WL 3470297, at *3 (N.D. Ill. 2005). This time period begins to run from the time the fraud was discovered or, in the alternative, when it could have been discovered through reasonable diligence. *Peskin v. Deutsch*, 479 N.E.2d 1034, 1039 (Ill. App. Ct. 1985). In this case, any amount of diligence would have revealed to the Plaintiff that the interest rate was not in fact 8%. Plaintiff had only to read the documents before him on December 10, 1999 to notice that the interest rate would be 10.25%. If there was any basis for Plaintiff's claim of fraud, that was the time at which reasonable diligence would have given him notice of it.

It is for these reasons that the statute of limitations for Plaintiff's fraud claim began to run on the date of the signing, December 10, 1999.[10] As discussed previously, equitable doctrines will not toll the five-year expiration date for this claim. Because Plaintiff filed his original complaint on December 22, 2004, more than five years after the contract was formed, Defendant's motion for summary judgment is GRANTED with respect to Count XV.

Defendant also points out that beyond the question of the relevant statute of limitations, Plaintiff has failed to state a case by which a reasonable jury could find all of the necessary elements of fraud. Under Illinois law, the Plaintiff must establish that (1) defendant made a false statement of material fact, (2) defendant knew or believed the statement was false, (3) plaintiff had a right to rely upon the statement, (4) plaintiff did rely on the statement, (5) defendant made

---

[10]During his deposition, Plaintiff attempted to undermine the importance of the closing date by denying that it was in fact a closing, thereby lessening the extent to which his failure to read the documents was a reflection of a lack of diligence at a time when he should have been on notice. However, Plaintiff himself refers to the date as the "Closing," (Orig. Cpt. at 4 et seq.), and exhibited no behavior in the following months to indicate that he doubted the loan's validity.

the statement for the purpose of inducing plaintiff to act, and (6) plaintiff's reliance led to plaintiff's injury. *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 905 (1996). In this case, reliance is lacking.[11] The required reliance element must be reasonable, meaning the Plaintiff must have been justified in so relying. *Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 882 (7th Cir. 2005). As a matter of law reliance cannot be reasonable where the Plaintiff had only to look at the contract before him to discover the fraud. *Thorpe v. Levenfeld*, 2005 WL 2420373, at *3 (N.D. Ill. 2005).

## *ICFA*

The Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*, requires: (1) a deceptive act or practice by defendant; (2) upon which defendant intended plaintiff to rely; (3) that involved trade and commerce; (4) from which plaintiff suffered actual damage; and (5) that this damage was proximately caused by the deception. *Davis v. G.N. Mortgage Corp.,* 396 F.3d 869, 883 (7th Cir. 2005) (citing *Capiccioni v. Brennan Naperville, Inc.*, 791 N.E.2d 553, 558 (2003)). A complaint brought under ICFA "must be pled with the same specificity as that required under common law fraud." *Id.* (citing *Elson v. State Farm Fire & Cas. Co.*, 691 N.E.2d 807, 816 (1998)). The statute of limitations for ICFA claims is three years. 815 ILCS 505/10(a)e.

A claim brought under ICFA accrues "when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Knox College v. Celotex Corp.*,430 N.E.2d 976, 979 (1982). Again, Plaintiff has provided no adequate reason the date of accrual should be different from the date on which the loan agreement was

---

[11]Defendant also points out that Plaintiff failed to describe the extent of his damages with any particularity or support as demanded by the computation of damages requirement of Fed. R. Civ. P. 26(a)(1)(C).

signed, particularly where the crux of the complaint's terms - the interest rate discrepancy - was easily ascertainable at that time. Because this claim for fraud under ICFA was brought after the statute of limitations ran out in 2002, Defendant's motion for summary judgment is GRANTED with respect to Count XIV.

### *TILA*

Congress enacted the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, to protect consumers and promote the "informed use of credit." TILA requires creditors to clearly and conspicuously disclose certain terms and costs to consumers before a credit transaction occurs. *See* 12 C.F.R. § 226.17. The statute of limitations for a claim under TILA is one year. 15 U.S.C. § 1640 (e). The date of accrual for TILA violations is generally the date upon which the loan documents were signed. *Estate of Henderson v. Meritage Mortg. Corp.*, 293 F.Supp.2d 830 (N.D. Ill. 2003).

For the reasons stated above it would not be appropriate to toll this statute of limitations, and Plaintiff has advanced no adequate justification for deviating from the standard means of determining statute of limitations accrual under TILA. The Plaintiff's complaint is therefore time-barred for failure to file before the statute of limitations ran out in 2000. Defendant's motion for summary judgment is therefore GRANTED with respect to Count IX.

The non-movant has failed to affirmatively demonstrate that there is a genuine issue of material fact requiring trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324 (1986); *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). Even after giving Plaintiff every benefit of the doubt in terms of the credibility and weight of the

evidence, he has failed to provide grounds on which estoppel could be based so as to allow these claims to move forward.

## Conclusion

For the foregoing reasons, Defendant's motion to dismiss is DENIED as moot, and its motion for summary judgment is GRANTED with respect to all three remaining counts.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **September 29, 2006**